RODGERS HELICOPTER      )
SERVICES, LLC, *et al.*,   )
                        )
        Plaintiffs,      )
                        )
    vs.                 )        No. 2:16-CV-536
                        )
CHARLES BETHELL, *et al.*,  )
                        )
        Defendants.      )

## <u>OPINION AND ORDER</u>

This matter is before the Court on the Motion to Dismiss Plaintiffs' Amended Complaint, filed by the defendants, Charles Bethell and Flamingo Cay Limited, on February 24, 2017. (DE #19.) For the reasons set forth below, the motion is **GRANTED in part and DENIED in part**.


<u>BACKGROUND</u>

The original plaintiff, Sage-Popovich, Inc. ("SPI"), filed a complaint in Porter Superior Court, cause number 64D02-1611-CC-10406, against the defendants, Charles Bethell ("Bethell"), Flamingo Cay Limited ("Flamingo Cay"), and David Pearce ("Pearce"), on or about November 14, 2016.[1] (DE #4.) On December

---

[1] Bethell is described as the "Owner and President" of Flamingo Cay, and Pearce is described as the "agent for Charles Bethell of Flamingo Cay Limited." (DE #17, pp. 1-2.) Pearce has not entered an appearance in this action or otherwise moved to defend it.

28, 2016, Bethell and Flamingo Cay (collectively, "Defendants"), removed the case to federal court on the basis of diversity jurisdiction. (DE #1.) On January 26, 2017, Defendants filed a motion to dismiss the complaint, arguing that SPI was not a party to any agreement with Defendants that would allow for recovery in a breach of contract action. (DE #11.) Subsequently, SPI filed an amended complaint adding Rodgers Helicopter Services, LLC ("Rodgers") as a co-plaintiff.[2] (DE #17.) On February 24, 2017, Defendants filed the instant motion to dismiss, arguing that the amended complaint still fails to allege any valid claim against either Bethell or Flamingo Cay. (DE #19.) SPI and Rodgers (collectively, "Plaintiffs") filed a response on March 10, 2017. (DE #23.) Defendants filed a reply on March 17, 2017. (DE #25.) The motion is ripe for adjudication.

DISCUSSION

*Relevant Facts*

Rodgers hired SPI as its agent to sell a Sikorsky S-76++ helicopter with serial number 760370 (the "Helicopter") at auction at the Gary International Airport in Gary, Indiana on April 7, 2016 (the "Auction"). (DE #17, p. 2.) SPI required bidders to

---

2  The Court denied the original motion to dismiss as moot on September 25, 2017. (DE #30.)

register in advance of the Auction by providing their contact information and related details via a written form (the "Auction Form"). (*Id.*; DE #17-1.) Plaintiffs allege that Bethell signed the Auction Form "in his own individual capacity without any indication of his agency relationship to Flamingo Cay." (DE #17, p. 2.) However, the Auction Form itself lists Flamingo Cay as the company name in the bidder contact and details section, the email address is listed as cbmbethell@flamingocay.com, and the address is listed as Fort Lauderdale, FL, which is where Flamingo Cay is alleged to be located. (*Id.* at 1; DE #17-1.) The Auction Form was electronically signed by Bethell on April 4, 2016. (DE #17-1.) Plaintiffs allege that, as part of the registration process, each bidder was required to abide by certain terms and conditions and was given a copy of them prior to being allowed to bid at the Auction (the "Terms and Conditions"). (DE #17, p. 2; DE #17-2.) The Terms and Conditions provide, in part, that:

> [a]ll bids tendered are to be considered valid and binding offers to purchase, and any bidder that defaults in payment of the deposit or balance of the purchase price due, the Seller, in its sole discretion, may cause such bidder's initial deposit to be forfeited to the Seller, and if Seller so elects, the Assets may be sold to the next highest bidder from the auction, without further notice. Seller reserves the right to seek damages including all collection costs and fees from any defaulting bidder.

(DE #17-2.) Pearce, who is alleged to be the agent "for Charles Bethell of Flamingo Cay Limited," hand-delivered the Auction Form to SPI and then proceeded to inspect the Helicopter for a day and a half prior to the Auction. (DE #17, pp. 1-2.)

A written bid letter agreement from "David Pearce/Flamingo Cay Limited" to Rodgers as "the 'Seller'" and SPI as "the 'Agent'" is dated and was allegedly signed by Bethell on April 5, 2016 (the "Bid Letter Agreement").[3] In relevant part, the Bid Letter Agreement states:

> We hereby, with full authority, submit this firm and unconditional offer to purchase the [Helicopter] . . . for consideration of $[425,000],[4] payable as follows: 15% deposit by wire transfer by close of business on 7 April 2016 and the balance in cash as provided below (the 'Purchase Price').
>
> We understand that this unconditional bid is not subject to modification or change. On the day of being notified that we are the winning bidder, we will (i) wire transfer in immediately available funds a non-refundable deposit of 15% of the Purchase Price ($[63,750.00]) (the 'Deposit') to an escrow account designated pursuant to an escrow agreement with Insured Aircraft Title Service, Inc. (the 'Escrow Agent') in such form satisfactory to the Seller. We shall

3 Plaintiffs allege that Bethell "signed the Bid Letter Agreement . . . in his own individual capacity, without any indication of this agency relationship to Flamingo Cay Limited." (DE #17, p. 3.) However, the Bid Letter Agreement references both Pearce and Flamingo Cay on its face. (DE #17-3.)

4 All of the numeric amounts inside of the brackets are hand-written on the bid Letter Agreement. (DE #17-3.)

promptly, with five (5) business days (the
'Closing Date'), purchase the [Helicopter] on
the terms set forth in this unconditional bid.
On the Closing Date, we shall wire transfer to
the Seller in immediately available funds the
balance of the Purchase Price $[361,250.00],
upon which the Seller shall direct the Escrow
Agent to release the Deposit to the Seller.
Upon receipt of the balance of the Purchase
Price, the Seller shall deliver a limited
warranty bill of sale in the form attached
hereto.  Any failure to complete the purchase
of the [Helicopter] pursuant to the foregoing
provisions (which, for avoidance of doubt,
include, without limitation, payment of the
balance of the Purchase Price and execution of
any documentation reasonably requested by
Seller in its sole discretion), as a result of
our breach or non-performance shall result in
the forfeiture of the Deposit to Seller upon
instruction by the Seller.   The Seller
reserves the right to seek any and all damages
from us caused by our failure to close the
sale of the [Helicopter].   The sale of the
[Helicopter] is absolute, without right or
setoff or deduction by us for any reason.

We agree that from and after the Closing Date,
we become liable for storage and parking fees.
We acknowledge that the Seller reserves the
right to accept or reject this or any other
bid and/or to adjourn, delay or terminate any
sale, in its sole and absolute discretion.

(DE #17-3.)  The Bid Letter Agreement states that the bid shall

remain valid until "N/A," and a hand-written note next to that

statement says, "Purchased at Auction 7 April 2016." (*Id.*) The

Bid Letter Agreement was "[a]cknowledged and accepted by: SELLER: Rodgers Helicopter, by Nick Popovich."[5] (*Id.*)

On April 7, 2016, the day of the Auction, Pearce actively bid on the Helicopter and was ultimately deemed to be the highest bidder with an oral bid of $425,000.00. (DE #17, p. 3.) SPI "publically accepted" Pearce's high bid on behalf of Rodgers. (*Id.*) According to Plaintiffs, Pearce advised SPI that he would contact Bethell to ensure the bid deposit was wired to the Escrow Agent in accordance with the Bid Letter Agreement. (*Id.*) However, the deposit was not timely submitted. (*Id.*)

Subsequently, Defendants tendered several reduced-price offers, which were never "consummated." (*Id.* at 4.) As of November 10, 2016, Defendants had not remitted any form of deposit, nor had they closed on the purchase of the Helicopter, so it was sold to another party for $300,000.00. (*Id.*) Plaintiffs claim they have suffered damages "in the form of the lost sale deficiency, lost commission, additional storage and carrying costs, and additional efforts to market the Helicopter, including advertising costs and two subsequent auctions." (*Id.* at 4-5.)

---

5  A signature is followed by "AGENT: Nick Popovich." (DE #17-3.)

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations other than fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" that the pleader is entitled to relief. In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). However, plaintiffs may plead themselves out of court if the complaint includes allegations that show they cannot possibly be entitled to the relief sought. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745, n. 1 (7th Cir. 2012) (citing Fed. R.

Civ. P. 10(c) and collecting cases). When contracts or other documents attached to a complaint contradict it, the allegations presented in the complaint are trumped by the documents. *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007). This principle serves the "important purpose of weeding out non-meritorious claims for which a trial is not necessary." *Flannery v. Recording Industry Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004).

A federal court sitting in diversity must apply federal procedural law and the appropriate state substantive law. *First Nat. Bank and Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 689 (7th Cir. 2004). "When a case is removed from state court based on the parties' diverse citizenship, the forum state's choice-of-law rules determine the applicable substantive law. *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009) (citing *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co.*, 544 F.3d 752, 759 (7th Cir. 2008)). In a typical contract case in Indiana, courts apply the "most intimate contacts" or "most significant relationship" test to determine the applicable law. *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 581 (7th Cir. 1994). Here, neither party addresses the threshold choice of law issue, but both Defendants and Plaintiffs submit their arguments according to Indiana law. Because there is a

reasonable relation to Indiana in that the Helicopter itself was located in Indiana prior to and during the Auction which is the event the dispute is centered around, the Court will apply the substantive law of Indiana. See *Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n. 13 (7th Cir. 2000) (the court will not perform an independent choice-of-law analysis where the parties agree on the governing law and the choice bears a "reasonable relation" to their dispute).

    <u>Existence of a Contract</u>

To sustain a cause of action for breach of contract in Indiana, a plaintiff must allege "the existence of a contract, the defendant's breach thereof, and damages." *Corry v. Jahn*, 972 N.E.2d 907, 913 (Ind. Ct. App. 2012) (citing *Haegert v. Univ. of Evansville*, 955 N.E.2d 753, 758 (Ind. Ct. App. 2011). The existence of a contract is shown by "[a]n offer, acceptance, consideration, and a manifestation of mutual assent . . . ." *Ind. Dept. of Corr. v. Swanson Servs. Corp*., 820 N.E.2d 733, 737 (Ind. Ct. App. 2005) (citation omitted). Once an offer is extended:

> the offeree must accept it, the communication
> of acceptance being crucial. Thus, a meeting
> of the minds between the contracting parties
> is essential to the formation of a contract.
> There must be mutual assent or a meeting of
> the minds on all essential elements or terms
> in order to form a binding contract.

*Id.* (internal quotation marks and citations omitted). Interpreting the construction of contract provisions is a duty left to the courts, and:

> [u]nless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence but will merely apply the contractual provisions.

*Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 273–74 (Ind. Ct. App. 2001) (internal citations omitted).

Defendants argue generally that Plaintiffs have not alleged the existence of a valid contract between any of the parties. In a footnote, they assert that there was no meeting of the minds regarding the amount to be paid for the Helicopter because additional offers were tendered to Plaintiffs following the Auction, and they point out in the facts section of their brief that no notice to the winning bidder was attached to the amended complaint. Plaintiffs respond by stating that Defendants were orally advised that the bid of $425,000.00 had been accepted, which is reflected in the Auction transcript.

Putting aside the question of proper parties to the contract for the moment, the Court notes that the amended complaint alleges Pearce, who was acting as the agent for Bethell of Flamingo Cay, submitted an oral bid of $425,000.00 for the Helicopter at the Auction. The attached Bid Letter Agreement is in accordance with this assertion as it reflects a "firm and unconditional offer" to purchase the Helicopter for $425,000.00. While it is true that the Bid Letter Agreement states that Rodgers reserved the right to accept or reject the bid, the amended complaint specifically alleges that SPI "publically accepted" the $425,000.00 bid on behalf of Rodgers and that Pearce subsequently advised SPI that he would contact Bethell regarding the transfer of the deposit in accordance with the terms described in the Bid Letter Agreement. These facts sufficiently allege that there was acceptance of the offer; it was not necessary for Plaintiffs to attach the Auction transcript to the amended complaint at the pleading stage. Furthermore, while Defendants argue that there was no meeting of the minds regarding the amount because Plaintiffs allege that Defendants tendered reduced price offers to them, the amended complaint states that Defendants did so *after* the original offer had been accepted and that those subsequent offers were made unilaterally without release of the original agreement. Taking these allegations as true, and giving Plaintiffs the benefit of

11

all reasonable inferences to which they are entitled at this stage, the Court finds that the existence of a contract has been adequately alleged.

### Parties to the Contract

Having determined that Plaintiffs have properly pled the existence of a contract, the question becomes whether SPI may sue Defendants for the alleged breach. In general, only parties to a contract have rights under it. *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314–15 (Ind. 1996) (citing *Gonzales v. Kil Nam Chun*, 465 N.E.2d 727, 729 (Ind. Ct. App. 1984)). However, a third party may enforce a contract by showing that the parties had intended the agreement to protect him. *Id*. at 1315 (citation omitted). The fact that performance of the contract would benefit the third party is not enough. *Id*. Rather, a third-party beneficiary seeking enforcement must specifically show:

> (1) A clear intent by the actual parties to the contract to benefit the third party; (2) A duty imposed on one of the contracting parties in favor of the third party; *and* (3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001) (citing *NN Investors Life Insurance Co. Inc. v. Crossley*, 580 N.E.2d 307, 309 (Ind. Ct. App. 1991)). The controlling factor is the intent

of the parties to benefit the third party and can be demonstrated "by specifically naming the third party or by other evidence." *Garco Indus. Equip. Co., Inc. v. Mallory*, 485 N.E.2d 652, 654 (Ind. Ct. App. 1985) (citing *Gonzales*, 465 N.E.2d at 729).  Such intent "must affirmatively appear from the language of the instrument when properly interpreted and construed."  *Cain v. Griffin*, 849 N.E.2d 507, 514 (Ind. 2006) (citing *OEC-Diasonics,* 674 N.E.2d at 1315).[6]

Defendants argue that SPI has not properly alleged it was a party to the contract at issue.  Specifically, they argue that the Auction Form is a registration form containing no terms whatsoever, that the Terms and Conditions do not refer to Flamingo Cay or Bethell in any manner, and that the Bid Letter Agreement is between Rodgers and Flamingo Cay only.  In response, Plaintiffs argue that SPI incurred damages in the form of reduced commission and additional costs associated with Defendants' breach, so it "owns

---

6  Intent must be interpreted objectively, and, in doing so, a court does "not examine the hidden intentions secreted in the heart of a person but, rather, examines the final expression found in conduct."  *Real Est. Support Servs., Inc. v. Nauman*, 644 N.E.2d 907, 910-11 (Ind. Ct. App. 1994).  This is true as to the intention of third-party beneficiaries as well, and "the question of the intention of the contracting parties . . . should be gathered from the terms of the contract itself, considered in its entirety against the background of the circumstances known to and shown to surround the contracting parties at the time of its execution."  *Id.* at 911 (citation omitted).

a vested interest in the claim, and may maintain this action as Plaintiff along with Rodgers."

Of note, Plaintiffs do not argue, nor is it alleged in the amended complaint, that SPI was a third-party beneficiary to the contract or that it is bringing its claims in that capacity; indeed, nothing in the amended complaint or attached documents reasonably leads to that inference.[7] The amended complaint does not allege that the contract was made with the intent to benefit SPI or that there was a duty imposed on Rodgers or Defendants in favor of SPI, and the relevant documents contain no provisions that would be demonstrative of either. Instead, the amended complaint simply defines SPI as the agent hired by Rodgers to arrange the Auction, it sets forth the details of the agreement to purchase the Helicopter followed by Defendants' alleged breach of that agreement, and it describes the subsequent efforts to finalize the sale of the Helicopter. While SPI is named in the attached documents, it is only done so in the context of being Rodgers' agent: the Auction Form states that the Helicopter was to be sold by SPI as the agent "on behalf of the owner Rodgers," and the Terms

---

[7] In *Luhnow*, the Seventh Circuit Court of Appeals noted that a motion for judgment on the pleadings was not the proper vehicle for making a determination of whether or not one was a third-party beneficiary to a contract; however, in doing so, the court specifically recognized the fact that the plaintiffs had stated in their complaint that they were third-party beneficiaries to the contract at issue. *Luhnow*, 760 N.E.2d at 626-27. The same cannot be said here.

and Conditions as well as the Bid Letter Agreement describe Rodgers as the seller and SPI as its agent, set forth the requirements for placing a bid, and describe how the deposit and remaining funds were to be transferred directly to Rodgers upon acceptance of an offer. There is no mention of a commission to be paid to SPI nor any affirmative language in the documents that bestows upon SPI the right to collect miscellaneous costs associated with the sale of the Helicopter. Moreover, the Terms and Conditions and Bid Letter Agreement both specifically indicate that it is Rodgers that reserves the right to seek damages, costs, and fees from a defaulting bidder rather than SPI.[8] The fact that the sale of the Helicopter at the Auction would have benefited SPI is not enough, and nothing in the amended complaint or relevant documents establishes that SPI is entitled to relief as a third-party beneficiary. See *OEC-Diasonics,* 674 N.E.2d at 1315; see also *Tucker v. Tom Raper, Inc*., 81 N.E.3d 1088, 1091 (Ind. App. 2017) (when written instrument is at issue, the court must focus on parties' intent to benefit the third-party and construe such intent from the language of the instrument); *Cain*, 849 N.E.2d at 514

---

8  The Terms and Conditions state, "Seller reserves the right to seek damages including all collection costs and fees from any defaulting bidder." (DE #17-2, p. 1.)  The Bid Letter Agreement states, "The Seller reserves the right to seek any and all damages from us caused by our failure to close the sale of the [Helicopter]." (DE #17-3, p. 2.)

("intent of the contracting parties to bestow rights upon a third party must affirmatively appear from the language of the instrument when properly interpreted and construed"); *Luhnow*, 760 N.E.2d at 629-30 (finding that plaintiffs were not third-party beneficiaries, in part, because the contract at issue contained no provisions that demonstrated an intent to benefit any other person); *Anton Realty, LLC v. Fifth Third Bank*, 1:15-CV-00199-RLY-TAB, 2015 WL 8675188, at *5 (S.D. Ind. Dec. 11, 2015) (dismissing complaint of plaintiffs who claimed to be third-party beneficiaries where intent to benefit plaintiffs did not affirmatively appear from the language of the attached documents).

Rather than argue explicitly that it is a third-party beneficiary, SPI contends that it may enforce the contract based on its status as Rodgers' agent. As noted above, it is true that the amended complaint lists SPI as the "agent" hired by Rodgers to sell the Helicopter, and the documents attached to the amended complaint reflect that contention. For example, the Auction Form defines SPI as "the 'Agent'" and states that the Helicopter will be "sold on behalf of the owner Rodgers." The Terms and Conditions lists SPI as the "Agent for the Seller" and separately lists Rodgers as the "Seller." The Bid Letter Agreement also defines Rodgers as "the 'Seller'" and Nick Popovich and SPI "as agent for Seller (the 'Agent')." Notably, the Bid Letter Agreement was

signed, "acknowledged and accepted by: SELLER: Rodgers Helicopter, By Nick Popovich" as "AGENT."

In general, an agent is not a party to a contract made on a disclosed principal's behalf; this is true as to both an agent's liability on the contract as well as an agent's ability to bring suit in his own name based on the contract. See e.g. *Carlson Wagonlit Travel, Inc. v. Moss*, 788 N.E.2d 501, 503 (Ind. Ct. App. 2003) ("Generally, in Indiana, 'where an agent discloses the identity of his principal and does not exceed his authority when contracting on the principal's behalf, the agent is not personally bound by the contract unless the agent agrees to be so bound.'") (citing *Boesch v. Marilyn M. Jones & Assocs.*, 712 N.E.2d 1061, 1062 (Ind. Ct. App. 1999)); *Clark Adver. Agency, Inc. v. Avco Broad. Corp.*, 383 N.E.2d 353, 355 (Ind. Ct. App. 1978) (usual inference[9] is that "where a person is known to be contracting as

---

[9] The inference may be overcome "not only by express language, but by custom, usage and the prior course of dealings between the parties." *Clark*, 383 N.E.2d at 355. Evidence of usage must be "known, uniform, reasonable, certain, and not contrary to law or opposed to public policy" and is then admissible to show intent of the parties to the contract "as to those matters which have not been clearly expressed." *Id.* at 355-56. In *Clark*, the court allowed specific evidence of prior usage and course of dealings between plaintiff and defendant to hold agent liable as a party to an oral contract between its disclosed principal and the other party to the contract. But see *Evan v. Poe & Assocs., Inc.*, 873 N.E.2d 92, 104 (Ind. Ct. App. 2007) (court need not look to extrinsic evidence when contract is unambiguous, and intent of parties related to third-party should be determined based on the four corners of the document). Here, the amended complaint does not allege any course of conduct, custom, or usage whatsoever that would reasonably create an inference that SPI is a party to the contract at issue on that basis.

agent of a disclosed principal, such contract, if within the agent's authority, binds the principal only"); *Gilman v. Walters*, 61 F. Supp. 3d 794, 804 (S.D. Ind. 2014) (citing to Restatement (Third) of Agency and finding that agent acting on behalf of a disclosed principal was not a party to the contract); Restatement (Third) of Agency § 6.01 (2006) ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise."); see also Restatement (Second) of Agency § 363 (1958) ("An agent who makes a contract on behalf of a principal cannot maintain an action thereon in his own name on behalf of the principal although authorized by the principal to bring suit, unless the agent is a promise or transferee.").

In *Rowe v. Rand*, 12 N.E. 377 (Ind. 1887), the only case cited by Plaintiffs to support their argument that SPI has the right to sue Defendants on its own behalf, the court addressed the matter of principal-agent relationships in the context of determining whether the contracting principal parties' mutual release revoked the agency of the individual that had been appointed as agent to sell the property of a company that had been foreclosed upon. The court stated:

An agent may sue in his own name – First, when
the contract is in writing, and is expressly
made with him, although he may have been known
to act as agent; secondly, when the agent is
the only known or ostensible principal, and is
therefore, in contemplation of law, the real
contracting party; thirdly, when, by the usage
of trade, he is authorized to act as owner, or
as       a       principal       contracting       party,
notwithstanding  his  well-known  position  as
agent  only.    But  this  right  of  an  agent  to
bring  an  action  in  certain  cases  in  his  own
name  is  subordinate  to  the  rights  of  the
principal, who may, unless in particular cases
where the agent has a lien or some other vested
right, bring suit himself, and thus suspend or
extinguish the right of the agent.

*Rowe*, 12 N.E. at 379–80.  As noted by Plaintiffs, the particular

circumstances where an agent has the right to bring suit himself

are addressed in the Restatement (Second) of Agency as follows:

(1) Unless otherwise agreed, an agent who has
or  who  acquires  an  interest  in  a  contract
which he makes on behalf of his principal can,
although not a promisee, maintain such action
thereon as might a transferee having a similar
interest.

Restatement (Second) of Agency § 372 (1958).  Plaintiffs argue

that  SPI's  incurred  losses,  including  "additional  storage  and

carrying costs, and additional efforts to market the helicopter,"

are  its  alone  and  were  caused  by  Defendants'  breach;  this,

according  to  Plaintiffs,  creates  SPI's  "vested  interest  in  the

claim"  necessary  to  bring  this  action  in  its  own  name  as  a

plaintiff along with Rodgers.

The Court finds this argument unavailing. Plaintiffs have not alleged facts sufficient to show that SPI is authorized to act as a principal party in this case with a superior right to bring suit under the contract. Neither the amended complaint nor the attached documents set forth any details about the business customs or the course of conduct between SPI and Rodgers that would indicate that SPI's interest is akin to that of an assignee or transferee. Plaintiffs do not allege that SPI holds a lien, that it has settled with Rodgers, or that it has a specific agreement with Rodgers to receive payment for its commission or any advances and/or expenses prior to turning the balance over to Rodgers. In fact, as addressed above, the amended complaint and attached documents make it clear that SPI was acting solely as Rodgers' agent,[10] and nothing more about the relationship between SPI and Rodgers or provisions as to a separate agreement between SPI and Rodgers (i.e. details of commission percentages, responsibilities for carrying costs and/or advance payments, or a delineation of

---

10  For example, SPI is defined as the agent hired to sell the Helicopter "on behalf of the owner Rodgers" and as the "Agent for the Seller." See Restatement (Third) of Agency § 6.01, comment d. (2006) ("If a contract names both the principal and the agent, in the absence of a manifestation to the contrary the agent is not a party to the contract if the contract indicates that the agent is named only as agent.  Such an indication may be made in many ways. These include statements of: (1) the principal's name followed by the agent's name preceded by a preposition such as "by" or "per"; and (2) the agent's name followed by the principal's name, separated by a word or phrase such as "for," "agent of," "agent for," "as agent of," or "on behalf of.").

expenses and duties related to the Auction) is even tangentially referenced. See *Rowe*, 12 N.E. at 380; Restatement (Second) of Agency § 372, comment a. The fact that SPI incurred the damages listed above, without more, is not the type of "vested interest" sufficient to transform SPI into an owner of a contractual right.

Rather, as noted in the corresponding subsection of the Restatement *not* cited by Plaintiffs:

> [a]n agent does not have such an interest in a contract as to entitle him to maintain an action at law upon it in his own name merely because he is entitled to a portion of the proceeds as compensation for making it or because he is liable for its breach.

Restatement (Second) of Agency § 372 (1958). This is so even when an agent suffers losses as to expenses or advances paid out. *Id*. at comment d. A district court in Indiana addressed issues analogous to those presented in the instant case when it analyzed whether certain counterclaims properly belonged to the defendant, as the principal on whose behalf and for whose benefit the contracts with plaintiffs were executed, or to its agents. See generally *Owner-Operators Indep. Drivers Ass'n, Inc. v. Mayflower Transit, Inc.*, No. 1:98-CV-0457-SEB-VSS, 2006 WL 1794751 (S.D. Ind. June 27, 2006). In finding that the principal possessed the rights to enforce its counterclaims rather than its agents, the court noted that the financial harms suffered by the agents (i.e.

advances and payments of expenses) were related to the principal-agent relationships, which were separate and distinct from the relationships and obligations between the contracting parties. *Id*. at *4-6. The court determined that the agents had no personal legal interest in the contracts they had negotiated for the principal despite those monetary harms. *Id*. at *5 (citing *Pasco Intern. (London) Ltd. v. Stenograph Corp*., 637 F.2d 496, 502 (7th Cir. 1980) and Restatement (Second) of Agency § 372(2)).[11] The court concluded that the plaintiffs' argument that the agents held the rights to enforce the counterclaims - which relied on the "direct course of dealing" between the principal and its agents - failed because it diluted the defendant's "key role as principal and the clear, intended beneficiary of the contracts entered into by the agents." *Mayflower*, 2006 WL 1794751, at *6.[12] The same is true here, where SPI's alleged financial damages arise from the relationship and/or agreements between SPI and Rodgers, of which

---

[11] The court further noted that if a dispute existed between the principal and its agents as to the agents' entitlement to recoup monies from the principal, "that dispute is independent from the immediate actions and should instead be addressed between the parties to that dispute, namely [the principal] and its agents." *Id*.

[12] See also *Media Placement, Inc. for Use and Benefit of Church By the Sea v. Combined Broad., Inc*., 638 So. 2d 105, 106 (Fla. 3d Dist. App. 1994) (finding that the agent did not have a cause of action for breach of contract "as its only stake in the contract [was] a commission" and noting in a footnote that payments made by the agent to "keep the contract viable" so it could eventually realize its commission did not change the result even though the agent stood "to lose this investment upon the nonperformance of the contract.").

no relevant factual details have been provided in the amended complaint or attached documents, rather than between SPI and Defendants.

Based on the foregoing, and because Plaintiffs were given direct prior notice that SPI's status as a party to the contract was being challenged by Defendants via their original motion to dismiss, the Court hereby dismisses SPI's breach of contract claims against Defendants with prejudice.

### *Claim against Bethell in his Individual Capacity*

Because SPI's claims against Defendants have been dismissed, the only issue that remains for the Court to address in this motion is whether Rodgers' breach of contract claim against Bethell in his individual capacity stands. The parties do not dispute that "[c]orporate officers signing contracts on behalf of their corporation generally are not liable individually for the contracts." *Yellow Book Sales and Distrib. Co., Inc. v. JB McCoy Masonry Inc*., 47 N.E.3d 388, 393 (Ind. Ct. App. 2015) (citing *Mullis v. Brennan*, 716 N.E.2d 58, 63 (Ind. Ct. App. 1999)). The Seventh Circuit Court of Appeals has held that a signature followed by the individual's corporate title facially supports the contention that the contract was signed on behalf of the business entity. See *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597,

599 (Ind. Ct. App. 1993); see also *Ferris Realty, Inc. v. Abco Signs, Inc.*, 182 N.E.2d 456, 460 (Ind. Ct. App. 1962) (contract signed by individual followed by his title was "presumed to be made on behalf of the corporation").

Here, Defendants argue that there is "no lawful reason to continue this action with Bethell as an individual defendant as he never signed any documents in his individual capacity." Plaintiffs, on the other hand, argue that because Bethell himself signed the Bid Letter Agreement as the "purchaser," he is personally liable for the offer to purchase the Helicopter.

The Court notes that the amended complaint specifically alleges that Bethell signed the Bid Letter Agreement "in his own individual capacity, without any indication of this agency relationship to Flamingo Cay Limited." However, as pointed out by Defendants, the face of the Bid Letter Agreement itself indicates that it is "from: David Pearce/Flamingo Cay Limited." Similarly, the Auction Form, which is alleged to have been signed by Bethell "in his own individual capacity without any indication of his agency relationship to Flamingo Cay Limited," specifically references Flamingo Cay in the "Bidder Contact and Details" section[13] and lists an email address ending in "flamingocay.com."

---

13  That reference to Flamingo Cay, however, is immediately followed by Bethell's first and last name.

That said, it is true that both of these documents are electronically signed by "Charles Bethell" without explicit reference to Bethell's status as owner and/or president of Flamingo Cay. Giving Rodgers the benefit of all reasonable inferences to which it is entitled, the Court finds that dismissal of Bethell in his individual capacity is unwarranted at this time.

CONCLUSION

For the reasons set forth in detail above, the motion to dismiss (DE #19) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** to the extent that it requests dismissal of SPI's breach of contract claims against Defendants Bethell and Flamingo Cay; these claims are **DISMISSED with prejudice**. The motion is **DENIED** to the extent that it requests dismissal of all claims against Bethell in his individual capacity; Rodgers' breach of contract claims **REMAIN PENDING** against Bethell and Flamingo Cay. Both Plaintiffs' claims **REMAIN PENDING** against Pearce, as he has neither entered an appearance in this case nor otherwise moved to defend it.

DATED: March 20, 2018          **/s/RUDY LOZANO, Judge**
                               **United States District Court**